# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | |
|---|---|
| United States of America<br>v.<br>Isaias David JOSE<br>and<br>Tomas Mateo GASPAR<br><br>*Defendant(s)* | Case No.   **25mj367** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  between Feb. 23 and Mar. 2, 2025  in the county of  Bernalillo  in the
_____  District of  New Mexico  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1203 | Hostage Taking |
| 8 U.S.C. § 1324(a)(1)(A)(iii) | Harboring an Illegal Alien |

This criminal complaint is based on these facts:

Please see the attached affidavit of FBI Special Agent Courtney Gale, which is incorporated by reference and has been reviewed by AUSA Lou Mattei.

☒ Continued on the attached sheet.

*Courtney S. Gale*
Complainant's signature

Courtney Gale, FBI Special Agent
Printed name and title

Electronically signed and telephonically sworn.

Date: March 3, 2025

*Laura Fashing*
Judge's signature

City and state:  Albuquerque, New Mexico    Laura Fashing, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Courtney Gale, Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since August of 2022. As such, I am a federal law enforcement officer within the meaning of Rule 41 of the Federal Rules of Criminal Procedure. I am currently assigned to the FBI's Transnational Organized Crime Task Force, at the Albuquerque Field Office of the FBI. I primarily investigate Transnational Organized Crime enterprises and Drug Trafficking Organizations (DTOs) involved in the unlawful possession of firearms, distribution of controlled substances, and other crimes and conspiracies associated with these offenses.

2. This affidavit is based on my observations and information obtained from other law enforcement sources, including oral and written reports. Because this affidavit is submitted for the limited purpose of securing a complaint, I have not included every fact known to me concerning this investigation. Many of the witness statements described below have been translated from Spanish to English and summarized for purposes of this affidavit; they are not intended to be verbatim transcriptions of what was said.

3. This affidavit is submitted in support of a criminal complaint charging Isaias David JOSE and Tomas Mateo GASPAR with the following violations:

    a. As to JOSE:
        i. 18 U.S.C. § 1203, that being Hostage Taking; and
        ii. 8 USC § 1324(a)(1)(A)(iii), that being Harboring an Illegal Alien.

    b. As to GASPAR:
        i. 8 USC § 1324(a)(1)(A)(iii), that being Harboring an Illegal Alien.

### PROBABLE CAUSE

**I.    Report of Ransom Demand**

4. On March 1, 2025, a complainant contacted the FBI and reported the kidnapping of his/her spouse, John Doe 1. The complainant received a phone call from phone number 505-524-6196 (later identified as belonging to JOSE) and was advised by unknown individuals to pay a ransom of 90,000 quetzales (Guatemalan currency)[1] to ensure the safety of John Doe 1. The individuals on the call told the complainant that John Doe 1 would be turned over to the Zeta Cartel

---

[1] This is roughly $11,600 in U.S. currency.

(also known as Los Zetas)[2] if payment was not made by March 4, 2025. The complainant reported that four unknown persons participated in this call. One had a Guatemalan accent, one a Mexican accent, and one spoke poor Spanish but better English.

5.     The complainant further stated that John Doe 1 had entered into the United States in January 2025. John Doe 1 was living and working in Albuquerque, New Mexico, and had spoken with the complainant daily until approximately February 23, 2025, when contact ceased.

6.     On March 1, 2025, the complainant received audio and video recordings from various phone numbers, to include the same 505-524-6196 number noted above. Initially, a video was sent of John Doe 1 stating his/her name, the date, and that John Doe 1 was being held by his/her abductors in Albuquerque, New Mexico. Based on my training and experience, this video was consistent with a "proof of life" video that is commonly sent in hostage-taking events.

7.     Later on March 1, 2025, the complainant received an audio recording from the same 505-524-6196 number noted above. The complainant also received a video file from the Guatemalan phone number. These communications instructed the complainant to take a photo of the demanded ransom money and send it to the Guatemalan phone number. When that was complete, the complainant would be sent a Guatemalan bank account number for deposit of the money. The participants in the call also demanded that the complainant have 20,000 quetzales[3] by the end of March 1, 2025, or John Doe 1 would be turned over to "the mafia." The complainant believed that if John Doe 1 was turned over to "the mafia," John Doe 1 would be harmed due to non-payment of the ransom.

## II.     Identification and Search of Stash House

8.     As noted above, the cell phone using phone number 505-524-6196 made at least two communications related to the hostage-taking scheme described above.

9.     Through location data associated with that phone, agents identified a residence at 845 Aritas Road SW, Albuquerque, NM 87105, in Bernalillo County, in the District of New Mexico (SUBJECT LOCATION), as the location of the phone. Agents then obtained a federal search warrant for that location.

10.    On March 2, 2025, agents executed the search warrant at the SUBJECT LOCATION.

11.    Inside the residence, agents encountered 10 illegal aliens (including John Doe 1) and one unaccompanied minor, as well as JOSE and GASPAR. The residence was sparsely furnished, and agents seized more than 20 cell phones from the residence. In a closet in the kitchen, agents located a bag of shoes that the 10 illegal aliens later claimed as their own. Based on my

---

[2] According to the U.S. State Department, Los Zetas, or Cártel del Noreste (CDN), is a transnational organization based in northeastern Mexico involved in drug trafficking, kidnapping, extortion, human smuggling, and other illicit activities. CDN uses violence to exert its criminal control, including attacks against government officials in Mexico. *See* https://www.state.gov/designation-of-international-cartels/.
[3] Around $2,500 in U.S. currency.

training and experience, these observations are consistent with the SUBJECT LOCATION being used as a stash house for a human smuggling organization.

12. During the search of the SUBJECT LOCATION, agents also identified a ledger that included dates, names, and locations. The ledger included names of several of the 10 illegal aliens who were present at the SUBJECT LOCATION, to include the person's true name and destination. Based on my training and experience, I know that human smuggling organizations often maintain ledgers documenting the smuggled person's date of arrival, name, and destination. I therefore believe this ledger is consistent with the SUBJECT LOCATION being used as a stash house for a human smuggling organization.

13. Following the execution of the search warrant at the SUBJECT LOCATION, law enforcement placed a phone call to 505-524-6196 from an agent's cellular phone. While the agent's phone was ringing to indicate the call was going through, law enforcement observed a phone ringing that belonged to JOSE. This is consistent with JOSE's phone being used to make some of the ransom-related communications described above.

14. In addition, through the interviews described below, agents identified JOSE and GASPAR as the two individuals responsible for operating and maintaining the stash house.

### III. Interview with John Doe 1

15. John Doe 1 told agents that he crossed illegally into the United States approximately 22 or 23 days prior to the search of the SUBJECT LOCATION. John Doe 1 was transported by truck to the SUBJECT LOCATION. John Doe 1 was then placed in a locked room inside the SUBJECT LOCATION and was not allowed to leave the room without permission. John Doe 1 reported that JOSE and GASPAR told the immigrants in the SUBJECT LOCATION to not say anything about them to law enforcement.

16. John Doe 1 also stated that JOSE threatened to send him to the "Mexican Mafia" if John Doe 1 did not pay $18,000 that he owed within 48 hours. GASPAR positioned John Doe 1 on his knees while JOSE recorded a video of John Doe 1 that was to be sent to John Doe 1's family to request the money via wire transfer. John Doe 1 positively identified JOSE and GASPAR.

### IV. Interview with Material Witness 1 (MW-1)

17. MW-1 crossed illegally into the United States approximately two weeks ago with group of approximately 45 immigrants. MW-1's wife paid $180,000 in Guatemalan currency to have MW-1 smuggled into the United States. MW-1 fled from Border Patrol officers to get into the United States. Once in the United States, MW-1 was assisted by human smugglers to get transportation to the SUBJECT LOCATION. MW-1 was locked in the SUBJECT LOCATION and instructed not to leave.

18. MW-1 was shown photos of JOSE and GASPAR. MW-1 positively identified JOSE and GASPAR as being in charge of the SUBJECT LOCATION.

3

## V. Interview with Material Witness 2 (MW-2)

19. MW-2 crossed illegally into the United States and was expected to pay approximately $15,000 to $16,000 in U.S. currency his/her human smugglers. MW-2 was locked in the SUBJECT LOCATION. MW-2 reported being yelled at through the locked door to be quiet or they "would get rid of them." MW-2 took this to mean they would be killed or turned over to law enforcement.

20. MW-2 identified JOSE and GASPAR as the individuals in charge at the SUBJECT LOCATION. MW-2 reported being afraid that JOSE and GASPAR would retaliate against MW-2 for cooperating with law enforcement.

## VI. Interview with GASPAR

21. After being advised of his *Miranda* rights, GASPAR agreed to speak with agents. GASPAR stated that he has been in the United States for approximately one year and eight months. GASPAR reported living in Lubbock, Texas, for most of that time, before coming to Albuquerque, New Mexico, approximately three weeks ago.

22. GASPAR stated a friend allowed him to stay at the SUBJECT LOCATION and he had planned to stay in Albuquerque and look for work. GASPAR reported that he had a vehicle at the SUBJECT LOCATION, that he was free to leave and buy things he needed, and that he did not owe anyone any money. Based on my training and experience, and by way of contrast with the statements from the illegal aliens in the SUBJECT LOCATION, these statements are consistent with GASPAR being one of the individuals in charge of the stash house.

## VII. Interview with JOSE

23. After being advised of his *Miranda* rights, JOSE agreed to speak with agents. JOSE stated he has been in the United States for approximately one year, living in Tennessee. He had been in Albuquerque, New Mexico, for approximately one month prior to the search of the SUBJECT LOCATION. JOSE's father spent approximately 60,000 Mexican pesos to illegally cross him into the United States a year ago.

24. After being shown the John Doe 1 ransom video described above, JOSE admitted that he recorded approximately five videos of five different illegal aliens at the SUBJECT LOCATION. In these videos, the individuals were instructed to say they were in Albuquerque, New Mexico, and to state their full name, the date, and that they were safe and sound. JOSE would send the videos to a Mexican phone number.

25. Subsequent analysis of JOSE's phone revealed multiple videos of the illegal aliens from the SUBJECT LOCATION, along with other unknown individuals.[4] Agents also discovered conversations in the phone with these videos discussing who had a "green light." Based on my training and experience, the phrase "green light" in this context is consistent with a reference to which individuals had their ransom paid. JOSE also admitted that he told immigrants at the

---

[4] The search of JOSE's phone is ongoing and has not yet been completed.

4

SUBJECT LOCATION not to say anything about him to law enforcement for fear of being blamed for something.

## VIII. Conclusion

26. Based on the facts above, there is probable cause to believe that between on or about February 23, 2025, and March 2, 2025, in Bernalillo County in the District of New Mexico, JOSE violated 18 U.S.C. § 1203, that being Hostage Taking, and 8 USC § 1324(a)(1)(A)(iii), that being Harboring an Illegal Alien; and that on or about March 2, 2025, GASPAR violated 8 USC § 1324(a)(1)(A)(iii), that being Harboring an Illegal Alien.

27. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

*Courtney S. Gale*
**Courtney Gale**
Special Agent
Federal Bureau of Investigation

Telephonically sworn and electronically signed on March 3, 2025.

*Laura Fashing*
**Laura Fashing**
United States Magistrate Judge